UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- x
                                                                              :

UNITED STATES OF AMERICA,         :   **MEMORANDUM AND ORDER**
                                                                              :   **ADOPTING REPORT AND**
                -against-                           :   **RECOMMENDATION**
                                                                              :

LUIS MATTA,                              :   07-CR-459 (DLI)(VVP)
                                                                                :
                               Defendant.             :
----------------------------------------------------------- x

**DORA L. IRIZARRY, U.S. District Judge:**

        Defendant Luis Matta ("Defendant") was charged with three violations of his conditions of supervised release. (*See* Violation of Supervised Release Report, Docket Entry No. 21; Supplemental Charge to Violation of Supervised Release Report, Docket Entry No. 27.) Charges One and Two involve the commission of crimes in violation of state law and arise from an incident in which Defendant was accused of striking Shavon Coakley, the mother of his four-year old daughter. Charge Three involves the use of a controlled substance arising from Defendant's consumption of cocaine while incarcerated at Riker's Island.[1] The Court referred the matter to the Honorable Viktor V. Pohorelsky, U.S. Magistrate Judge, for a hearing and the issuance of a Report and Recommendation.

        On December 6, 2012, following an evidentiary hearing, the magistrate judge issued a report and recommendation ("R & R"), recommending that the Court find Defendant guilty of committing the violations of which he is accused in Charges One, Two and Three. Defendant filed a timely objection. (*See* Def.'s Objection, Docket Entry No. 44.) The government responded to the objection and contends that Defendant's objections are without merit. (Gov't's Resp., Docket Entry No. 45.)

---

[1] Defendant does not contest Charge Three. (Tr. of November 13, 2012 Evidentiary Hearing ("Tr.") 96.)

1

For the reasons set forth below, the R & R is adopted, and Defendant's supervised release is revoked.

## BACKGROUND

On the evening of August 25, 2012, Coakley, who was in route to pick up her daughter from a birthday party, suffered a broken jaw. Coakley did not seek medical attention for the injury until the following day, August 26, 2012. (GX[2] 2.) Upon arriving at the hospital on August 26, 2012, medical records indicate that Coakley initially declined to describe the circumstances of her injury to hospital personnel and indicated that she did not want a police report made. (GX 2 Page 1; Tr. 67.) However, Coakley eventually told hospital personnel that she had been struck by the father of her daughter. (GX 2 Pages 2, 6, 8; Tr. at 68-70.) Hospital personnel then contacted the police. (GX 2, Page 8.)

Later in the day on August 26, 2012, New York City Police Officer Stanislov Yakovlev arrived at the hospital and met with Coakley. (Tr. 8-9.) Coakley told Yakovlev that when she went to pick up her daughter the previous night, Defendant grabbed Coakley by the neck and punched her several times in the face. (Tr. 12.) Coakley also signed a written statement stating that Defendant had punched her in the face. (GX 7; Tr. 12-14, 47.) An individual named Jason, a friend of Coakley's, was present during Coakley's meeting with Yakovlev. (Tr. 10, 40.)

On September 24, 2012, Defendant was arrested by New York City Police Detective Kenneth Wieber for the assault of Coakley. (Tr. 26-27.) Defendant told Wieber that Coakley previously had stated that she had been injured in Cooper Park when someone ran past and bumped into her, which caused her to lose her balance and fall. (Tr. 27-28.) Wieber also spoke to Coakley later that day to discuss the incident. (Tr. 29-30.) Coakley then claimed that

---

[2] "GX" refers to the government's exhibits received in evidence at the November 13, 2012 evidentiary hearing.

Defendant had not punched her in the mouth; instead, similar to Defendant, she stated that someone accidently had bumped into her in Cooper Park, causing her to lose her balance and hit her face on the sidewalk. (*Id.*) Coakley also stated that her prior statements implicating Defendant in the incident were false and that she had been "drugged up" at the hospital. (Tr. 30.)

On September 26, 2012, U.S. Probation Officer Yara Suarez also spoke to Coakley about the incident. (Tr. 62.) Instead of claiming that someone had accidently bumped into her, Coakley now claimed that she had been jumped from behind and punched in the face. (Tr. at 62.) Coakley also noted that her pocketbook had been stolen, but denied that Defendant had any involvement in the incident. (Tr. at 62-63.)

On November 13, 2012, Coakley testified at the evidentiary hearing and, when questioned about the incident, maintained that someone other than Defendant had attacked her from behind. (Tr. 40-42, 54.) However, contrary to her previous statement to Suarez, Coakley now claimed that a gift bag she was carrying had been stolen, not her pocketbook. (Tr. at 42.) Coakley also stated that she had received medication for her injuries while she was at the hospital and could not recall what she previously said to the police about the incident. (Tr. 55.)

## DISCUSSION

When a party objects to a report and recommendation, a district judge must make a *de novo* determination with respect to those portions of the report and recommendation to which the party objects. *See* Fed. R. Civ. P. 72(b); *United States v. Male Juvenile*, 121 F.3d 34, 38 (2d Cir. 1997). If, however, a party makes conclusory or general objections, or attempts to relitigate the party's original arguments, the court will review the report and recommendation for clear error. *See Robinson v. Superintendent, Green Haven Corr. Facility*, 2012 WL 123263, at *1 (E.D.N.Y. Jan. 17, 2012) (quoting *Walker v. Vaughan*, 216 F. Supp. 2d 290, 292 (S.D.N.Y. 2002)). The

district court may then "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b); *see also* 28 U.S.C. § 636(b)(1).

In recommending that the Court find Defendant guilty of committing the violations of which he is accused in Charges One and Two, the magistrate judge did not credit Coakley's testimony at the hearing, but instead concluded that "the only truthful statements Coakley has made about the events that caused her injuries were those made at the hospital to medical personnel and to police officer Yakovlev." (R & R at 5.) Additionally, the magistrate judge found that Coakley's and Matta's statements to Wieber, indicating that Coakley was injured after a passerby accidently bumped into her, "were pure fabrications cooked up between them in September before [Defendant's] arrest once [Defendant] learned that Coakley had told the police and hospital personnel about his assault on her." (R & R at 8.)

Defendant contends that the government failed to prove that he committed the crimes of menacing and assault by a preponderance of the evidence and raises the following specific objections to the R & R: (1) the magistrate judge should have credited Coakley's in-court testimony instead of crediting Coakley's out-of-court statements at the hospital; (2) the magistrate judge overlooked Coakley's motive to falsely identify Defendant as her attacker; and (3) the magistrate judge's finding that Defendant fabricated a story with Coakley is belied by a telephone conversation between Defendant and an unidentified female. (Def.'s Objection at 1-3.) Defendant's objections are unavailing.

First, while it is true that testimony made in a formal hearing and under oath is generally more deserving of belief than prior out-of-court statements, the Court sees no reason to disturb the magistrate judge's decision not to credit Coakley's in-court testimony in this instance.

4

Among other things, Coakley indicated at the hospital that she did not want to have the police involved in the matter, and, upon returning home, Coakley provided a series of inconsistent explanations for her injuries. *Cf. United States v. Carthen*, 681 F.3d 94, 103 (2d Cir. 2012) (noting that "[v]ictims of [domestic] violence often are protective of, and deny allegations against, their abusers"). Defendant nonetheless suggests that Coakley's out-of-court statements are not worthy of belief because Coakley was under the influence of medication. (Def.'s Objection at 2.) However, Defendant's argument is contradicted by the medical records and documents prepared while Coakley was at the hospital, which tend to indicate that Coakley was fully cognitive at the time she made the relevant out-of-court statements. For instance, Coakley's own handwritten statement describing the incident is clear and intelligible. (GX 7.) Additionally, hospital records from August 26, 2012—the date Coakley made statements to Yakovlev—indicate that Coakley was alert and oriented, her speech was normal, and her sensory and motor functions were intact. (GX 5, Page 3.)

It is evident that the magistrate judge's decision not to credit Coakley's in-court testimony is also rooted in his personal observations of Coakley's demeanor and manner at the evidentiary hearing.[3] *See Carrion v. Smith*, 549 F.3d 583, 588 (2d Cir. 2008) ("[A] district judge should normally not reject a proposed finding of a magistrate judge that rests on a credibility finding without having the witness testify before the judge.") (citation and internal quotations omitted); *Grassia v. Scully*, 892 F.2d 16, 20 (2d Cir. 1989) ("[T]he district judge should not enter an order inconsistent with the credibility choices made by the magistrate without personally

---

[3] (*See* R & R at 8 ("[Coakley's] demeanor appeared resentful. Her testimony was not open, but guarded, with pauses at times suggesting that her testimony was not the product of her memory about events that had actually occurred, but rather the product of fabrications that required thought to insure consistency. She also had the tendency to avert her eyes when providing answers to the questions posed by the government.").)

5

hearing the live testimony of the witnesses whose testimony is determinative") (internal citation omitted). Accordingly, the Court declines to reject this portion of the R & R.

Second, the magistrate judge properly declined to credit Defendant's suggestion at the hearing that Coakley had a motive to lie at the hospital because Jason—a friend of Coakley's—was present when Coakley made her statements to Officer Yakovlev. Defendant suggests that, if Jason had somehow caused Coakley's injuries, Coakley would have been unlikely to name the true attacker to Yakovlev with Jason present. (Def.'s Objection at 2.) This argument is without merit because it is based on pure conjecture: nothing in the record—including Coakley's own testimony—indicates that Jason had any involvement with Coakley's injuries.

Third, the magistrate judge's finding that the statements made by Coakley and Defendant to Detective Wieber on September 24, 2012 were "pure fabrication" is supported by the entire record. Defendant nonetheless suggests that a conversation between Defendant and an unidentified female that took place on September 26, 2012, two days after Defendant was arrested, demonstrates Defendant was not involved in fabricating an explanation for Coakley's injuries. (Def.'s Objection at 3.) The transcript of the phone conversation provides as follows:

> UF: Luis, Luis, listen to me. Whether you got locked up that day, they would have, do you know they would have been looking for you because she made a report.
>
> LM: Alright.
>
> UF: It don't matter. Don't you think it's better that you found out now than later? Because she said she didn't make one against you.
>
> LM: Yeah.
>
> UF: But now you know that's what the [expletive] she did.
>
> LM: Yeah.

(GX 6B-3.)

According to Defendant, the phone conversation demonstrates that he was unaware that Coakley had ever identified him to the police prior to his arrest, and, for that reason, Defendant suggests "it makes little sense" for him to concoct a false story as to the source of Coakley's injuries. (Def.'s Objection at 3.) However, even if Defendant were unaware that Coakley had identified him to the police prior to his arrest, the motivation to concoct a false story presumably still would exist in light of the severity of Coakley's injuries and extent of her medical treatment.[4] Moreover, as the government notes, there appears to be little reason for Coakley to tell Defendant "she didn't make [a report] against [him]" if Defendant had not, in fact, been responsible for the assault. Indeed, the logical inference to make from such a denial is that Coakley was in fear of Defendant and how he might react if she advised him that she had reported the assault to the police. In any event, a review of the entire transcript of the evidentiary hearing and related exhibits demonstrates that the magistrate judge's finding of fabrication is warranted.

In sum, the Court adopts the magistrate judge's thorough and well-reasoned R & R and finds that the government has proven Charges One, Two, and Three by a preponderance of the evidence, establishing that Defendant violated the terms of his supervised release.

---

[4] Coakley testified that surgery was required to repair her broken jaw, including the insertion of two metal plates. Coakley also remained in the hospital for a number of days after she first visited the emergency room. (Tr. 51-52.)

## **CONCLUSION**

After conducting a *de novo* review of the portions of the R & R to which Defendant objects, and, after finding no clear error in the remainder of the R & R, the R & R is adopted in its entirety, and Defendant's supervised release is revoked.


SO ORDERED.


Dated: Brooklyn, New York
   August 30, 2013

                  /s/
               DORA L. IRIZARRY
             United States District Judge